IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-801-D

| | |
|---|---|
| LEONARD EDDIE, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-15, DE-18] pursuant to Fed. R. Civ. P. 12(c). Claimant Leonard Eddie ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on March 26 and April 3, 2013, respectively, alleging disability in both applications beginning June 16, 2008. (R. 195–202). Both claims were denied initially and upon reconsideration. (R. 59–118). A hearing before the Administrative Law Judge ("ALJ") was held on February 12, 2015, at which Claimant,

represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 33–58). On May 7, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–32). On July 11, 2016, the Appeals Council denied Claimant's request for review. (R. 1–5). Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

gainful activity since the alleged onset date. (R. 19). Next, the ALJ determined Claimant had the

severe impairments of depression, alcohol abuse, obesity, obstructive sleep apnea, and sarcoidosis,

and the non-severe impairments of GERD, melena, hypertension, esophageal reflux, unspecified

disorder of the stomach and duodenum, and hypersomnia. (R. 19–20). However, at step three, the

ALJ concluded these impairments were not severe enough, either individually or in combination, to

meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1. (R. 20–21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's

mental impairments have resulted in mild limitations in activities of daily living, and moderate

limitations in social functioning and concentration, persistence, and pace, with no episodes of

decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

ability to perform light work[1] with the following limitations:

> avoid concentrated exposure to temperature extremes, hazards such as dangerous,
> moving machinery, and pulmonary irritants such as dust, fumes, and gases.
> Furthermore, he is limited to work involving simple, routine, repetitive tasks, without
> production requirements or similar, fast-paced jobs with deadlines or quotas. Finally,
> he is limited to work that involves only occasional interaction with others such as
> co-workers, supervisors, and the public.

(R. 22–26). In making this assessment, the ALJ found Claimant's statements about his limitations

not entirely credible. (R. 22). At step four, the ALJ concluded Claimant did not have the RFC to

perform the requirements of his past relevant work as a tobacco sorter and fork lift operator. (R. 26).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 26–27).

Claimant contends the ALJ erred by (1) failing to fully account for his mental limitations in the RFC; (2) failing to conduct a function-by-function analysis of his mental abilities; and (3) failing to resolve apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Pl.'s Mem. [DE-16] at 9–21.

## V. DISCUSSION

### A.  Claimant's Mental Limitations

Claimant contends the ALJ failed to fully account for his mental limitations in the RFC, specifically by not including each limitation suggested by Dr. Wilson, a state agency psychologist, whose opinion the ALJ assigned great weight, and also failed to conduct a function-by-function analysis of his mental abilities. *Id.* at 12–14.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-

5

severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In evaluating the opinion evidence, the ALJ assigned great weight to Dr. Wilson's opinion. (R. 25, 97–99, 112–14). The ALJ summarized Dr. Wilson's opinion and explained the weight assigned as follows:

> The state agency consultant at the reconsideration level more specifically opined that the claimant can understand and follow short and simple 2-3 step instructions and sustain concentration for completion of simple tasks, but distractions associated with mental tasks may occasionally interfere with his ability to sustain focus (Ex. 5A, 6A). Further, he opined that the claimant can accept non-confrontational direction from a supervisor and maintain adequate relationships with co-workers in a work setting with minimal social interaction requirements and only casual public contact (Ex. 5A, 6A). Finally, he opined that the claimant can avoid hazards and should adapt to changes associated with non-production simple, routine, repetitive tasks in a position with minimal social interaction requirements (Ex. 5A, 6A). The undersigned gave this opinion as a whole great weight, as it is consistent with the medical evidence showing the existence of psychiatric-related functional impairment but not to the extent alleged by the claimant. Recent evidence, if anything, shows improvement rather than worsening (Ex. 6F). The consultants had the opportunity to examine the claimant['s] longitudinal medical history and the opinions they rendered, specifically at reconsideration, represent a nuanced analysis of the claimant's mental functioning. For these reasons, the undersigned gave [this] opinion[] great weight.

(R. 25). Claimant argues the RFC does not account for Dr. Wilson's opinion that Claimant can (1) understand and follow short and simple 2–3 step instructions and sustain concentration for completion of simple tasks, but distractions associated with mental tasks may occasionally interfere

6

with his ability to sustain focus; (2) accept non-confrontational direction from a supervisor and maintain adequate relationships with co-workers in a work setting with minimal social interaction requirements and only casual public contact; and (3) avoid hazards and should adapt to changes associated with non-production simple, routine, repetitive tasks in a position with minimal social interaction requirements. Pl.'s Mem. [DE-16] at 13.

As initial matter, the ALJ was not required to adopt fully the limitations suggested by Dr. Wilson's opinion because he assigned it great weight. *See Bundy v. Colvin*, No. 5:14-CV-55-FL, 2015 WL 450915, at \*5 (E.D.N.C. Feb. 3, 2015) ("The ALJ is not required to conform the RFC to include every limitation in [a medical] opinion, provided the decision sufficiently reflects the ALJ's reasoning and is supported by substantial evidence.") (citing *Armentrout v. Astrue*, No. 3:10CV504, 2011 WL 4625931, at \*7 (E.D. Va. June 2, 2011) ("While the ALJ assigned 'significant' probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis."), *adopted by* 2011 WL 4625912 (Oct. 3, 2011)). The ALJ adopted limitations in the RFC largely consistent with Dr. Wilson's opinion by limiting Claimant to simple tasks, occasional interaction with others, such as co-workers, supervisors, and the public, no production requirements or fast-paced jobs with deadlines or quotas, and no concentrated exposure to hazards. (R. 22). Nevertheless, Claimant argues that if distractions associated with mental tasks occasionally interfere with Claimant's ability to focus (with "occasionally" defined as 1/3 of the time), it is doubtful he would be employable. Pl.'s Mem. [DE-16] at 13 (citing S.S.R. 83-10 & S.S.R. 96-9p).

In specifically considering Claimant's ability to maintain concentration, the ALJ noted a September 2013 treatment note indicating Claimant's attention was "grossly intact," other treatment

7

notes indicating Claimant's depression made it difficult for him to concentrate were not supported by the record, and Claimant's condition had subsequently improved. (R. 24–25). The ALJ also noted that recent evidence demonstrated improvement when discussing Dr. Wilson's opinion. (R. 25). Also, Rulings 83-10 and 96-9p define "occasionally" as "occurring from very little up to one-third of the time." S.S.R. 83-10, 1983 WL 31251, at *4 (Jan. 1, 1983); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). Dr. Wilson ultimately concluded Claimant was able to "sustain attention to perform tasks" (R. 99, 114), which implies that he did not believe Claimant would be off task to the point that he could not work, and both Dr. Wilson and the ALJ determined Claimant was only moderately limited in his ability to concentrate (R. 21, 98, 113). Accordingly, the ALJ appropriately accounted for Dr. Wilson's opinion in the RFC.

Claimant also argues that the ALJ failed to conduct a function-by-function analysis of Claimant's mental abilities. Pl.'s Mem. [DE-16] at 13. In *Mascio*, the Fourth Circuit explained that when assessing RFC, Ruling 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d at 636 (footnote omitted) (quoting S.S.R. 96-8p). The ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand

may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

The ALJ's decision regarding the limitations imposed due to Claimant's mental abilities provides for meaningful review. The regulations direct the ALJ to "assess the nature and extent of [a claimant's] mental limitations and restrictions . . . such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting[.]" 20 C.F.R. §§ 404.1545(c), 416.945(c). In formulating the RFC, the ALJ discussed Claimant's testimony that he has trouble relating to others and difficulty communicating and learning new information. (R. 22). The ALJ then discussed Claimant's treatment notes related to his mental impairments and the opinion evidence from his treatment provider, noting the records reflected "minimal findings as to the effects of claimant's depressive disorder on his concentration other than subjective allegations" and that more recent evidence, from after Claimant completed substance abuse treatment, indicated improvement in these areas. (R. 24–25). Specifically, as discussed above, in assessing Dr. Wilson's opinion, the ALJ explained that there was "medical evidence showing the existence of psychiatric-related functional impairment but not to the extent alleged by the claimant," and the ALJ again noted Claimant's more recent improvement. (R. 25). Finally, the ALJ incorporated into the RFC limitations to account for Claimant's mental abilities, including limitations to simple, routine, and repetitive tasks with no production requirements or fast-paced work with deadlines or quotas, and also limited his interaction

9

with others. (R. 22); *see also* (R. 25) ("There is little support within the record . . . that the claimant would not be able to work in any capacity, especially with the limitations outlined above of simple, routine, repetitive tasks and work with only occasional interaction with others."). *See Wheeler v. Berryhill*, No. 5:16-CV-00225-FL, 2017 WL 3493616, at *3 (E.D.N.C. Aug. 15, 2017) (concluding remand based on the failure to conduct a function-by-function analysis was not required "because the ALJ discussed in her decision the functional limitations alleged by plaintiff" and "the ALJ's discussion is sufficiently detailed to enable meaningful review."). Accordingly, where the ALJ's decision sufficiently conveys his consideration of Claimant's mental abilities and the mental limitations imposed in the RFC are supported by substantial evidence, remand is not warranted.

## B.    The VE's Testimony and the DOT

Claimant contends the ALJ failed to identify and resolve apparent conflicts between the VE's testimony and the DOT. Pl.'s Mem. [DE-16] at 9–12, 14–21. Pursuant to Ruling 00-4p, the ALJ must "inquire, on the record, . . . whether the vocational expert's testimony conflict[s] with the [DOT], and [the Ruling] also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the [DOT]." *Pearson v. Colvin*, 810 F.3d 204, 207–08 (4th Cir. 2015) (internal quotation marks omitted) (citing S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). However, not "all possible conflicts must be identified and resolved," but rather only "apparent conflicts," i.e., "where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.* at 209. The ALJ must elicit from the VE "a reasonable explanation for the apparent conflict," S.S.R. 00-4p, at *4, and the ALJ has not fulfilled his duty to fully develop the record if it "contains an unresolved conflict between the expert's testimony and the [DOT]" or if the ALJ "ignores an apparent conflict because the expert testified that no conflict existed."

*Pearson*, 810 F.3d at 210. "An expert's testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209–10.

The ALJ, in reliance on the VE's testimony, identified three representative occupations an individual with Claimant's age, education, work experience, and RFC would be able to perform: electronics worker, DICOT 726.687-010, light exertion, and unskilled, representing 1,300 jobs in the regional economy and 39,000 jobs in the national economy; shipping and receiving weigher, DICOT 222.387-074, light exertion, and unskilled, representing 2,500 jobs in the regional economy and 76,000 jobs in the national economy; and mail sorter, DICOT 209.687-026, light exertion, and unskilled, representing 1,500 jobs in the regional economy and 71,000 jobs in the national economy. (R. 27, 56). The ALJ asked the VE whether the testimony conflicted with the DOT, and the VE stated that it did not. (R. 56).

1.    **Electronics Worker**

Claimant contends the DOT description of electronics worker conflicts with the limitation in the hypothetical to the VE to avoid concentrated exposure to pulmonary irritants and hazards, and to no production requirements or similar fast-paced jobs with deadlines or quotas. Pl.'s Mem. [DE-16] at 10–12. There are 14 environmental conditions accounted for in the DOT: exposure to weather; extreme cold; extreme heat; wet and/or humid; noise intensity level; vibration; atmospheric conditions; proximity to moving mechanical parts; exposure to electrical shock; working in high, exposed places; exposure to radiation; working with explosives; exposure to toxic, caustic chemicals; and other environmental conditions. App. D. Environmental Conditions, Selected

11

Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCODICOT"). There is no specific category for "pulmonary irritants," but they are included in the category of "atmospheric conditions," which is defined as "exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin." *Id.* A separate category exists for "exposure to toxic, caustic chemicals." *Id.*

The DOT description for electronics worker states that toxic, caustic chemicals are present "occasionally," but atmospheric conditions are "Not Present–Activity or condition does not exist." DICOT 726.687-010. Thus, the pulmonary irritants the ALJ was concerned with are not present for the occupation of electronics worker pursuant to the DOT description, and there was no apparent conflict for the ALJ to resolve. *See Frye v. Berryhill*, No. 1:16CV543, 2017 WL 3242259, at *6 (M.D.N.C. July 28, 2017) (memorandum and recommendation finding no apparent conflict where the job required use of glues and paste and the RFC restricted exposure to pulmonary irritants, because the DOT description provided that atmospheric conditions involving exposure to fumes or odors that affect the respiratory system were not present).

The case of *Brinkley v. Colvin*, relied upon by Claimant, is distinguishable because in that case the court found "the job descriptions of packer and inspector indicate that the worker may be exposed to gases, fumes, and/or odors through the use of a Bunsen burner, inert gas and/or a dye bath, or through the production of circuit boards even though Plaintiff's RFC indicates she should 'avoid concentrated exposures to gases, dust and fumes.'" No. 3:16-CV-00172-FDW, 2017 WL 220133, at *3 (W.D.N.C. Jan. 18, 2017). Here, there is nothing in the description for electronics worker that indicates the worker would be exposed to pulmonary irritants and, as explained above, the description expressly states that such exposure is not present. *See* DICOT 726.687-010. This

also distinguishes this case from *Pearson*, where the RFC limited the claimant to occasional "overhead reaching" and the DOT listed frequent "reaching" as a requirement for each occupation. *Pearson*, 810 F.3d at 210. The court concluded this was an apparent conflict requiring resolution, because overhead reaching may be contemplated within the meaning of "reaching," and it was appropriate for the ALJ to elicit testimony from the VE to determine whether the occupations in fact do require frequent overhead reaching. *Id.* at 211. Here, Claimant speculates that "[j]obs requiring use of caustic chemicals, solvents and trimming and cutting of parts using a cutting tool or file, typically entail the generation of fumes, particulates or dust." Pl.'s Mem. [DE-16] at 10. With this logic, Claimant moves beyond what is apparent and into the realm of what is possible. The Fourth Circuit in *Pearson* expressly declined to expand the ALJ's duty to include inquiry as to "all *possible* conflicts," because it would impermissibly "require the ALJ to do more than simply compare the *express language* of the [DOT] and the vocational expert's testimony, and would allow the claimant to nitpick an ALJ's or expert's word choice on appeal." 810 F.3d at 209 (emphasis added). The case of *Bridges v. Colvin*, cited by Claimant, is also distinguishable because the DOT descriptions for day worker and hand packager indicated, respectively, that the worker would be required to dust or to clean containers in an environment with frequent exposure to atmospheric conditions in apparent conflict with a restriction on concentrated exposure to dust, fumes, or gasses. No. 3:14-CV-540-RJC, 2016 WL 854425, at *4 (W.D.N.C. Mar. 4, 2016). Accordingly, there is no apparent conflict between the VE's testimony and the DOT based on the Claimant's limitation regarding pulmonary irritants.

Claimant also contends that the VE's testimony conflicts with the DOT based on the occasional presence of toxic, caustic chemicals and Claimant's limitation to avoid hazards. Pl.'s

Mem. [DE-16] at 11–12. Claimant points out S.S.R. 96-9p provides that "hazards" include "moving

mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed

places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals."

1996 WL 374185, at *9. The ALJ specifically stated that Claimant needed to "avoid concentrated

exposure to . . . hazards such as dangerous, moving machinery[.]" (R. 22). The Commissioner

argues that had the ALJ meant "all hazards," he would have said so and that the use of "such as" was

meant to limit the type of hazards to dangerous, moving machinery. Def.'s Mem. [DE-19] at 8.

However, reading the ALJ's decision as whole, the Commissioner's position is unsupported.

The ALJ does not expressly discuss the reason for assessing a limitation to avoid hazards.

(R. 17–28). However, the ALJ adopted, for the most part, the limitations suggested by Dr. Wilson,

whose opinion stated that "Claimant's ability to tolerate stress and pressure associated with day to

day work activity appears diminished but he can *avoid hazards* and should be able to adapt to

changes associated with nonproduction SRRTs in a position with minimal social interaction

requirements." (R. 22, 25, 99, 114) (emphasis added). It is not evident from the ALJ's decision why

he would limit Claimant to avoiding concentrated exposure to the hazard of dangerous, moving

machinery, but not the other hazards contemplated by the SCODICOT, such as working in high,

exposed places; exposure to radiation; working with explosives; or exposure to toxic, caustic

chemicals. Dr. Wilson's opinion did not suggest restricting the field of hazards to only dangerous,

moving machinery, and the ALJ expressly assigned great weight to Dr. Wilson's opinion and

provided no further discussion regarding Claimant's ability to work with hazards of any type.

Furthermore, if the ALJ only intended to limit Claimant's exposure to dangerous, moving machinery,

there was no reason to use the broader term hazards. A fair reading of the ALJ's opinion indicates

he intended Claimant to avoid concentrated exposure to any hazards, and dangerous, moving machinery was but one example. Thus, there is an apparent conflict between the VE's testimony and the DOT based on Claimant's limitation to avoid exposure to hazards and the presence of toxic, caustic chemicals.[2] *See Reyes v. Colvin*, No. CV 13-4850-MAN, 2015 WL 349352, at *5 (C.D. Cal. Jan. 23, 2015) (finding a conflict between the VE's testimony and the DOT where, among other things, the hypothetical included a limitation to no hazards and the occupation of electronics worker included the presence of toxic, caustic chemicals); *Garcia v. Colvin*, No. ED CV 12-1365-PJW, 2013 WL 4605488, at *1 (C.D. Cal. Aug. 28, 2013) (same). Accordingly, it is recommended that the matter be remanded for the ALJ to resolve this apparent conflict between the VE's testimony and the DOT.

Claimant also argues that there is an apparent conflict between the VE's testimony and the DOT description of the work required for an electronics worker based on Claimant's limitation to no "production requirements or similar, fast-paced jobs with deadlines or quotas." (R. 22). The court has previously recognized that "[t]he DOT's definition of Electronics Worker (DOT # 726.687-010) specifically notes that the exertion level of that position is light work because of the production pace and lists a number of assembly-line tasks in the overview of duties." *Upchurch v. Colvin*, No. 5:13-CV-669-FL, 2014 WL 4352097, at *5 (E.D.N.C. Sept. 2, 2014). In the context of considering whether the ALJ included all appropriate non-exertional limitations in the RFC, the court has also

---

[2] There is some question as to whether "concentrated exposure" is in conflict with "occasional exposure." *See Patton v. Colvin*, No. EDCV 12-02091 AJW, 2013 WL 6018059, at *6 (C.D. Cal. Nov. 12, 2013) (finding no unresolved conflict between the DOT and the VE's testimony where the ALJ imposed a limitation to avoid concentrated exposure to pulmonary irritants but the job of electronics assembler required no exposure to atmospheric conditions, and concluding that a limitation to "concentrated exposure" was not at odds with the potential for "occasional exposure"). However, the Commissioner did not make this argument and the undersigned will not consider it *sua sponte* without the benefit of briefing.

acknowledged a claimant experiencing difficulty with pace may resultingly have difficulty with full-time employment as an electronics worker. *Wade v. Berryhill*, No. 5:15-CV-506-D(2), 2017 WL 782561, at *4 (E.D.N.C. Feb. 10, 2017), *adopted by* 2017 WL 780793 (Feb. 28, 2017). Comparing the DOT description of electronics worker—which includes production-type tasks and is classified as light work, potentially as a result of requiring "production rate pace" or other factors such as the amount of walking or standing, DICOT 726.687-010—to the VE's testimony, there is an apparent conflict in light of the limitation to no production requirements or similar, fast-paced jobs with deadlines or quotas. Accordingly, the ALJ should elicit testimony to resolve the apparent conflict on remand.

### 2.      Shipping and Receiving Weigher and Mail Sorter

Claimant contends the VE's testimony that Claimant can perform the occupations of shipping and receiving weigher and mail sorter conflicts with DOT's requirement for Reasoning Level 3 in light of Claimant's limitation to simple, routine, repetitive tasks. Pl.'s Mem. [DE-16] at 14–21. The Commissioner concedes the court has previously concluded that "the DOT's reasoning level three requirement conflicts with the ALJ's prescribed limitation that [an individual can] perform only simple, routine, repetitive work." Def.'s Mem. [DE-19] at 5 (quoting *Yurek v. Astrue*, No. 5:08-CV-500-FL, 2009 WL 2848859, at *9 (E.D.N.C. Sept. 2, 2009) (holding "the DOT's reasoning level three requirement conflicts with the ALJ's prescribed limitation that [an individual can] perform only simple, routine, repetitive work" and collecting cases)). However, the Commissioner contends that this would not rise to the level of an "apparent" conflict under *Pearson* because of the amount of "interpretation and inference" required. Def.'s Mem. [DE-19] at 5–6.

The DOT descriptions of shipping and receiving weigher and mail sorter require Reasoning

Level 3, which means the individual must be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DICOT 222.387-074, 209.687-026. A limitation to performing simple tasks appears inconsistent with the requirements of Reasoning Level 3 that the individual be able to "[d]eal with problems involving *several* concrete variables" and to carry out instructions in "diagrammatic form." *Id.* (emphasis added); *see Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (concluding a "limitation to simple, routine tasks is at odds with Level 3's requirements because it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form' as such instructions can be abstract.") (internal quotation marks and citation omitted). This is not simply a "possible conflict," but rather is one that "require[s] the ALJ to do [no] more than simply compare the express language of the [DOT] and the vocational expert's testimony[.]" *Pearson*, 810 F.3d at 209; *see Lorch v. Berryhill*, No. 3:16-CV-00076-RJC, 2017 WL 1234203, at *5 (W.D.N.C. Mar. 31, 2017) (finding "an apparent conflict does in fact exist—absent facts identified by the ALJ resolving the conflict—between a limitation to simple, routine, and repetitive tasks [and] a person's ability to perform an occupation requiring Level 3 reasoning.") (citing *Adkins v. Berryhill*, No. 1:15-CV-00001-RLV, 2017 WL 1089194, at *4 (W.D.N.C. Mar. 21, 2017)). Accordingly, the ALJ should elicit testimony from the VE to resolve the apparent conflict on remand.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-15] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-18] be DENIED, and the matter be remanded to the Commissioner for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 7, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **10 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Submitted, this the 24 day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge

18